1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

ERIC SCOTT LEVINE,

CASE NO. C11-1280MJP

11

Plaintiff,

ORDER ON CITY'S MOTION FOR
SUMMARY JUDGMENT

12

v.

13

CITY of BOTHELL, a municipal
corporation; A. SEAN UNGVARSKY, in
his capacity as a police officer for the City
of Bothell and as an individual;
SNOHOMISH COUNTY; and
SNOHOMISH COUNTY PUBLIC
UTILITY DISTRICT NO. 1,

14

15

16

17

Defendants.

18

19        This matter comes before the Court on the motion for summary judgment filed by

20   Defendants the City of Bothell and Bothell Police Department Detective A. Sean Ungvarsky.

21   (Dkt. No. 24.) Having reviewed the motion, Plaintiff's opposition (Dkt. No. 31), Defendants'

22   reply (Dkt. No. 33), and all related filings (Dkt. Nos. 25, 26, 32), the Court GRANTS IN PART

23   and DENIES IN PART Defendants' motion. The Court GRANTS summary judgment in favor of

24   Defendant City of Bothell on Plaintiff's § 1983 claims because Plaintiff fails to allege his

1  constitutional injuries resulted from municipal policy, practice, or custom. The Court also

2  GRANTS Defendants' motion for summary judgment on Plaintiff's malicious prosecution claim,

3  because no genuine issue of material fact exists with regard to that claim. The Court DENIES

4  summary judgment on all other claims because Defendant Ungvarsky does not have qualified

5  immunity and because genuine issues of material fact exist.

6                                          **Background**

7          This case is about what, if any, remedy is available when a police officer fails to comply

8  with the Fourth Amendment requirement that an application for a search warrant be "supported

9  by oath or affirmation." U.S. Const. amend. IV. Defendant Ungvarsky submitted an affidavit for

10  a search warrant of Plaintiff's home, but failed to make any oath or affirmation, either orally or

11  in writing, in support of his application. (Dkt. No. 31 at 9-10.) Criminal charges against Plaintiff

12  for manufacturing marijuana were dismissed in 2009 because of warrant defects, and Plaintiff

13  now seeks damages for violation of his Fourth Amendment rights under 28 U.S.C. § 1983 from

14  the individual officer who applied for the faulty search warrant, as well the municipal entities

15  that executed the warrant. (Dkt. No. 32-2 at 3.) Plaintiff also seeks damages for trespass,

16  conversion, and malicious prosecution against the municipal entities, but not the individual

17  officer. (Dkt. No. 1 at 12-16.)

18          This case began on Aug. 4, 2008, when Bothell Police officers responded to a reported

19  assault at Plaintiff's home. (Dkt. No. 25 at 2.) Officers identified the victim as Plaintiff's

20  girlfriend, who told them she had been assaulted by Plaintiff. (Id.) Plaintiff's girlfriend also told

21  officers that Plaintiff had been growing about fifty large plants in his basement, and that he kept

22  about thirty firearms in a locked safe in his living room. (Id.)

23

24

1     Bothell police officers arrested Plaintiff for assault. (Dkt. No. 25 at 2.) While searching

2   Plaintiff incident to the arrest, one of the officers detected the smell of fresh marijuana on

3   Plaintiff's body. (Id.) Later that day, officers again interviewed Plaintiff's girlfriend about the

4   plants in Plaintiff's basement. (Id.) A Bothell Police detective also made a public power usage

5   request to the Snohomish County Public Utility District, which showed higher than normal

6   power usage, consistent with an indoor marijuana growing operation. (Id. at 4.)

7     The following day, Aug. 5, 2008, Bothell Police Department Detective A. Sean

8   Ungvarsky authored a five-page search warrant affidavit and a one-page proposed search

9   warrant. (Dkt. No. 25 at 4.) While Detective Ungvarsky says he believed he was making an

10  affirmation under penalty of perjury, the affidavit contained no language saying it was sworn

11  under penalty of perjury, and Detective Ungvarsky never made any formal oath or affirmation to

12  anyone regarding his affidavit.  (Dkt. No. 24 at 4.) The affidavit and proposed warrant were

13  reviewed and approved by a Snohomish County deputy prosecuting attorney. (Id.) Detective

14  Ungvarsky called various Snohomish County District Courts to see if a judge was available, and

15  learned that Cascade District Court Commissioner Paul Moon was available to review the search

16  warrant application if it was sent by fax. (Dkt. No. 25 at 4-5.) Ungvarsky then faxed it to Moon.

17  (Id.)

18    Commissioner Moon reviewed the affidavit and signed it because he determined that the

19  affidavit established probable cause to believe that Plaintiff had committed the crime of

20  manufacturing marijuana under RCW 9A.50. (Dkt. No. 26 at 2.) Moon struck the language

21  "subscribed before me" from the affidavit, because Detective Ungvarsky had not been sworn by

22  him. (Id.) In his declaration, Moon states that the Snohomish County prosecutor's office had

23  recently sent a memo to police agencies with instructions to sign affidavits with the certification

24

ORDER ON CITY'S MOTION FOR SUMMARY
JUDGMENT- 3

1   language in RCW 9A.72.085, and Moon believed Ungvarsky had followed these procedures.

2   (Dkt. No. 26 at 2.) Moon states he believed the certification procedure in RCW 9A.72.085—

3   which allows a written certification under penalty of perjury to satisfy prior requirements of a

4   sworn statement—satisfied the "oath or affirmation requirement" of the Fourth Amendment.

5   (Id.) Detective Ungvarsky does not assert that he followed the procedures of RCW 9A.72.085.

6   (Dkt. No. 25 at 5.)

7       Detective Ungvarsky received the signed search warrant about 90 minutes after he sent it

8   to Commissioner Moon. (Id.) The warrant had been assigned a warrant number, furthering

9   Ungvarsky's belief that the warrant had been fully approved. (Id.) Following approval,

10  Ungvarsky went to see Plaintiff in the cell where he was being held, and advised Plaintiff that a

11  search warrant had been obtained for his home. (Id.) Another officer, Bothell Police Detective

12  Chissus, "asked Mr. Levine whether or not he would like us to use his house keys in order to

13  gain entry into his home." (Id.) Plaintiff provided written consent for another officer to pickup

14  his keys from the Lynnwood City Jail, where they were being held. (Id.)

15      The warrant was executed on Plaintiff's home at about 6:30 p.m. on Aug. 5, 2008, by

16  members of the Bothell Police Department and the Snohomish County Narcotics Task Force.

17  (Dkt. No. 25 at 5.) The officers recovered seventy live marijuana plants, four dried marijuana

18  plants, packaging equipment, a digital scale, ziplock bags, and heat sealed bags. (Id.) Police also

19  found a safe containing thirty guns, including twenty-two rifles, five shotguns, and two

20  handguns. (Id. at 6.) All of the property was seized, including the firearms. (Id.)

21      As a result of the search, Plaintiff was detained and then booked into jail. (Dkt. No. 31 at

22  4.) He was charged in Snohomish County Superior Court with growing marijuana plants, but

23  those charges were later dismissed. (Id. at 4-5.) In addition to the criminal case, Snohomish

24

County and the Snohomish Regional Drug Task Force, of which Defendant City of Bothell was a member, filed a civil lawsuit seeking forfeiture of Plaintiff's real property, the subject of the search warrant. (Id. at 5.) This case was dismissed on June 16, 2009, based on the same evidentiary issues related to the search warrant. (Id. at 6.)

Plaintiff brings the present suit against Detective Ungvarsky in his individual capacity under 28 U.S.C. § 1983 for three alleged violations of the Fourth Amendment. (Dkt. No. 1 at 8-10.) Plaintiff seeks to recover for unreasonable seizure of himself and his property, entry and search of his home without a valid warrant, and arrest pursuant to an invalid warrant. (Id.) Plaintiff also seeks to impose municipal liability under § 1983 for these alleged constitutional violations against the City of Bothell and Snohomish County. (Id. at 10-12.) Plaintiff also brings tort claims for trespass, conversion, and malicious prosecution against the City and County under a theory of respondeat superior. (Dkt. No. 31 at 17-19.) Plaintiff initially included tort claims for negligence and invasion of privacy, but now withdraws these claims. (Id.)

Defendants Detective Ungvarsky and the City of Bothell move for summary judgment on all Plaintiff's claims. (Dkt. No. 24.) They assert that they did not violate Plaintiff's Fourth Amendment rights because the warrant at issue satisfied the "oath or affirmation" requirement. (Id. at 7.) Defendant City of Bothell argues it cannot be held liable for any alleged constitutional violations because Plaintiff cannot show they resulted from a municipal policy or a failure to train. (Id. at 12-14.) Detective Ungvarsky claims he is entitled to qualified immunity because he relied on the warrant in reasonable good faith. (Id. at 22.) Defendants also argue that Plaintiff fails to adequately allege the elements of trespass, conversion, and malicious prosecution. (Id. at 14-17.)

**Discussion**

A.  <u>Summary Judgment Standard</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). When the nonmoving party has the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving party's case. <u>Id.</u> at 325. Once the moving party has met his burden, Rule 56 requires the nonmoving party to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. <u>Id.</u> at 324.

In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. <u>Allen v. City of Los Angeles</u>, 66 F.3d 1052, 1056 (9th Cir. 1995). On a motion for summary judgment, all reasonable inferences are drawn in favor of the non-movant. <u>Gibson v. County of Washoe</u>, 290 F.3d 1175, 1180 (9th Cir. 2002).

B.  <u>Plaintiff's § 1983 Claims</u>

1.  <u>Fourth Amendment Violations</u>

Defendants' argument that they should be granted summary judgment on Plaintiff's § 1983 claims because the search warrant was valid fails as a matter of law. The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. There are four separate requirements that a warrant must meet: (1) It must be based on probable cause, (2) supported by a sworn affidavit, (3) particularly

1  describe the place of the search, and (4) particularly describe the persons or things to be seized.

2  Groh v. Ramirez, 540 U.S. 551, 557 (2004). A failure to meet even one of these requirements

3  renders a warrant facially invalid. See id.; Stanford v. Texas, 379 U.S. 476 (1965); United States

4  v. Crozier, 674 F.2d 1293, 1299 (9th Cir. 1982).

5       Defendants offer no evidence that the warrant in this case was supported by oath or

6  affirmation. "An 'Oath or affirmation' is a formal assertion of, or attestation to, the truth of what

7  has been, or is to be, said." United States v. Bueno-Vargas, 383 F.3d 1104, 1110 (9th Cir. 2004)

8  (quoting United States v. Brooks, 285 F.3d 1102, 1105 (8th Cir. 2002)). Black's Law Dictionary

9  (7th ed. 1999) defines an oath as a "solemn declaration, accompanied by a swearing to God or a

10  revered person or thing, that one's statement is true." Id. at 1099. Black's defines an

11  "affirmation" as a "pledge equivalent to an oath but without reference to a supreme being or to

12  'swearing.'" Id. at 59. Here, Detective Ungvarsky's affidavit contains no language swearing or

13  affirming that the statements it contains are true. (Dkt. No. 32-1 at 4-9.) The language in the

14  warrant itself, which begins "Upon the sworn complaint made before me it appears . . .," is not a

15  representation that the information supporting the warrant is true. (Id. at 2.) Rather, that language

16  is a reference to a "sworn complaint," an item conspicuously missing here. (Id.)

17       The Court rejects Defendants' argument that Detective Ungvarsky was under oath

18  because he believed he was under oath. (Dkt. No. 24 at 7-8.) While courts have shown some

19  flexibility in the formal requirements of an oath or affirmation, they have never done away with

20  the requirement altogether. In United States v. Bueno-Vargas, the Ninth Circuit held that signing

21  a statement under penalty of perjury satisfies the standard for an oath or affirmation. 383 F.3d

22  1104, 1111 (9th Cir. 2004). This likely would have covered Defendants if Detective Ungvarsky

23  had followed the requirements of RCW 9A.72.085, as Commissioner Moon believed he had.

24

1   (Dkt. No. 26 at 2.) However, Detective Ungvarsky never signed such a statement. (Dkt. No. 32-1

2   at 4-9.) The "true test," the Ninth Circuit explained, "is whether the procedures followed were

3   such that perjury could be charged therein if any material allegation contained therein is false."

4   383 F.3d at 1111 (citing 2 Wayne R. LaFave, Search and Seizure § 4.3(e), at 474-75 (3d ed.

5   1996)). Here, Defendants do not assert that Detective Ungvarsky made any statements or took

6   any actions that would subject him to a perjury charge if his assertions had proven to be false.

7   (Dkt. No. 32-1 at 4-9.)

8          Other cases cited by Defendants also do not support Defendants' assertion that the oath or

9   affirmation requirement was met in this case. In United States v. Brooks, the Eighth Circuit held

10  that an officer had not violated the oath or affirmation requirement when he subscribed and

11  swore to his affidavit in front of a notary, rather than a person authorized to administer oaths.

12  285 F. 3d 1102, 1105-06.  The Eighth Circuit found it relevant that, in addition to swearing his

13  affidavit before a notary, the officer's "affidavit contained at the very least an affirmation of the

14  truth of the statements in it, because it included a number of formal assertions that he was telling

15  the truth." Id. at 1106.  Here, Detective Ungvarsky did not make a statement in front of anyone,

16  and there is nothing in his affidavit asserting that he was telling the truth. Id.; (Dkt. No. 32-1 at

17  4-9.) Defendants' citation to United States v. Turner is also not persuasive. 558 F.2d 46 (2d Cir.

18  1997). There, the Second Circuit approved an oath given by an officer to a judge over the

19  telephone. Id. at 50. Here, there was no oath given in any manner. (Dkt. No. 25.) While

20  Defendants are correct that the Fourth Amendment does not require "magic words," it does

21  require some words approximating an oath or affirmation. (Dkt. No. 24 at 8.)

22          Defendants' argument that negligent or innocent mistakes do not support an action under

23  § 1983 also fails. (Dkt. No. 24 at 9.) While the Supreme Court has "recognized the need to allow

24

1   some latitude for honest mistakes that are made by officers in the dangerous and difficult process

2   of making arrests and executing search warrants," Defendants do not offer any evidence that the

3   circumstances around Detective Ungvarsky's preparation of the warrant application were either

4   dangerous or difficult. Maryland v. Garrison, 480 U.S. 79, 87 (1987). Rather than looking at

5   whether the mistakes were negligent or innocent, the correct inquiry in the Ninth Circuit is

6   "whether the officer's actions are objectively reasonable in light of the facts and circumstances

7   confronting [him], without regard to [his] underlying intent or motivation." Caballero v.

8   Concord, 956 F.2d 204, 206 (9th Cir. 1992) (internal quotations omitted). With no evidence from

9   Defendants suggesting exigent circumstances, the objective reasonableness of Detective

10   Ungvarsky's alleged failure is a disputed fact question, and is inappropriate to resolve at the

11   summary judgment stage. See Allen, 66 F.3d at 1056.

12       Finally, Defendants' assertion, first made in their reply brief, that no Fourth Amendment

13   violation occurred because Plaintiff consented to the search of his home, is also unpersuasive. In

14   his declaration, Detective Ungvarsky explains that, after receiving the warrant back from

15   Commissioner Moon, he went to the holding cell where Plaintiff was being held and "advised

16   Mr. Levine that a search warrant had been obtained for his residence." (Dkt. No. 25 at 5.)  He

17   explains that another officer "asked Mr. Levine whether or not he would like us to use his house

18   keys in order to gain entry into his home." (Id.) Faced with the prospect of police forcibly

19   entering his house, Plaintiff agreed to release his keys. (Id.) While police officers may conduct a

20   warrantless search when they have obtained the voluntary consent of a party with authority over

21   the premises, the government has the burden of demonstrating that consent to a warrantless

22   search was voluntary. United States v. Kaplan, 895 F.2d 618, 622 (9th Cir. 1990). In Kaplan, the

23   Ninth Circuit explained that consent is usually not voluntary when an officer "says he can obtain

24

ORDER ON CITY'S MOTION FOR SUMMARY
JUDGMENT- 9

1  the search warrant, as if it were a foregone conclusion." Id. Here, Detective Ungvarsky went a

2  step further, telling Plaintiff he had already obtained a warrant. (Dkt. No. 25 at 5.) In this

3  context, Plaintiff's agreement to release his keys does not represent voluntary consent to a

4  warrantless search. (Id.)

5        It is the "basic principle of Fourth Amendment law that searches and seizures inside a

6  home without a warrant are presumptively unreasonable." Groh, 540 U.S. at 559 (citing Payton

7  v. New York, 445 U.S. 573, 586 (1980). When a warrant is not supported by oath or affirmation,

8  the search of a residence, seizure of property, and the arrest of a person in the residence are

9  unreasonable under the Fourth Amendment. Therefore, summary judgment is inappropriate on

10  Plaintiff's three substantive § 1983 Fourth Amendment claims.

11        2.   Municipal Liability for § 1983 Claims

12        Defendant City of Bothell is entitled to summary judgment on Plaintiff's claims under §

13  1983 because there is no genuine issue of material fact that Plaintiff's injury was not inflicted

14  pursuant to city policy, regulation, custom or usage. "A municipality may be held liable under a

15  claim brought under § 1983 only when the municipality inflicts an injury, and it may not be held

16  liable under a respondeat superior theory." Gibson v. County of Washoe, 290 F.3d 1175, 1185

17  (9th Cir. 2000) (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694

18  (1978)). Plaintiffs who seek to impose liability on local governments under § 1983 must prove

19  that "action pursuant to official municipal policy" caused their injury. Monell, 436 U.S. at 691.

20  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its

21  policymaking officials, and practices so persistent and widespread as to practically have the force

22  of law." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011).

23        The Fourth Amendment violations that Plaintiff alleges do not come close to the

24  definition of municipal policy. Id. Plaintiff asserts that Detective "Ungvarsky carried out what

ORDER ON CITY'S MOTION FOR SUMMARY
JUDGMENT- 10

1   the trier of fact could find was a City custom or policy of submitting an unsworn document

2   seeking a warrant because the detective believed that he was making an affirmation" (internal

3   quotations omitted). (Dkt. No. 31 at 13.) But besides a single incident involving a single

4   detective, Plaintiff points to nothing suggesting that Bothell has a policy of officers failing to

5   support warrants by oath or affirmation. (Id.) There is simply nothing in the record supporting a

6   conclusion that municipal policy caused the alleged constitutional violation. See Watkins v. City

7   of Oakland, 145 F.3d 1087, 1092 (9th Cir. 1998). Neither is there any evidence of practices of

8   sufficient duration, frequency and consistency that would represent a municipal custom or

9   practice sufficient to trigger municipal liability. See Trevino v. Gates, 99 F.3d 911, 918 (9th Cir.

10  1996).

11         Plaintiff also fails to show that his injury resulted from the City's failure to train

12  Detective Ungvarsky. A municipality can be directly liable under § 1983 for deliberate or

13  conscious failure to train its employees adequately. City of Canton v. Harris, 489 U.S. 378, 392

14  (1989). To hold a municipality liable for failure to train, a plaintiff must show an "inadequacy so

15  likely to result in the violation of constitutional rights[] that the policymakers of the city can

16  reasonably said to have been deliberately indifferent to the need." Id. at 390. The Supreme Court

17  has held that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose

18  liability under Monell, unless proof of the incident includes proof that it was caused by an

19  existing, unconstitutional municipal policy, which policy can be attributed to a municipal

20  policymaker." Oklahoma City v. Tuttle, 471 U.S. 808, 823-34 (1985). Plaintiff offers no facts

21  supporting a finding that the alleged failure to train amounted to deliberate indifference such that

22  the City of Bothell can be subject to liability under § 1983.

23

24

C. <u>Tort Claims</u>

Defendants are not entitled to summary judgment on Plaintiff's claims for trespass and conversion, because those claims turn in part on the validity of the underlying warrant.  Where law enforcement officers execute a valid search warrant, they are not liable for trespass to land or damage to property resulting from the execution of that warrant, so long as they do not cause damage greater than is required for a thorough investigation. 16 Wash. Prac., Tort Law and Practice § 13.51 (3d ed.); (Dkt. No. 24 at 14). However, because the search warrant at issue may have been invalid, Defendants may be liable for trespass.

Similarly, Plaintiff's claim for conversion survives summary judgment because the validity of the search warrant is at issue. Conversion is "the act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it." <u>Judkins v. Sadler-Mac Neil</u>, 61 Wn.2d 1, 3 (1962) (citations omitted). Defendants assert that they had lawful justification, because they operated pursuant to a valid search warrant. (Dkt. No. 33 at 9.) However, because the warrant may have been invalid, a genuine issue of material fact exists.

In contrast, Plaintiff's claim for malicious prosecution fails, because probable cause existed to arrest Plaintiff even if the search warrant was invalid. To maintain an action for malicious prosecution, a plaintiff must prove five elements: (1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damages as a result of the prosecution. <u>Rodriguez v. City of Moses Lake</u>, 158 Wn. App. 724 (2010). First, Plaintiff does not even allege that the proceedings were instituted or continued through malice.

1    (Dkt. No. 1 at 16.) Plaintiff's malicious prosecution claim also fails because probable cause is a

2    complete defense to an action for malicious prosecution. See Hanson v. City of Snohomish, 121

3    Wn.2d 552, 563 (1993). The statements made by Plaintiff's former girlfriend that Plaintiff's

4    house contained up to 50 marijuana plants and that Plaintiff kept about 30 firearms and had been

5    planning to make bombs provided sufficient probable cause. (Dkt. No. 25 at 2.) Probable cause is

6    also supported by Officer Rogers's detection of fresh marijuana on Plaintiff as he searched him

7    incident to arrest, as well as the patter of higher than usual power usage at Plaintiff's residence.

8    (Id. at 3-4.) The conclusion that probable cause existed is further supported by the declaration of

9    Commissioner Moon, who stated there were "different bases for a probable cause finding" in

10   Detective Ungvarsky's five-page affidavit. (Dkt. No. 26 at 3.)

11          Plaintiff's argument that this evidence is insufficient because it is "tainted fruit" of the

12   invalid search warrant is both legally and factually incorrect. (Dkt. No. 31 at 19.) First, the

13   evidence providing probable cause was gathered before any alleged constitutional violation

14   occurred. (Dkt. No. 25.) Second, while the "fruit of the poisonous tree" doctrine applies to the

15   exclusionary rule, it does not necessarily bar the use of evidence to show probable cause existed

16   for the defense of a malicious prosecution claim. See, e.g., United States v. Ceccolini, 435 U.S.

17   268, 275 (exclusionary rule does not proscribe the introduction of evidence in all proceedings).

18   Because Defendants show that probable cause existed, and Plaintiff does not offer evidence to

19   the contrary, summary judgment is appropriate on Plaintiff's malicious prosecution claim.

20          D.  Qualified Immunity

21          Defendant Ungvarsky is not entitled to qualified immunity because it is clearly

22   established that the failure to support a warrant by oath or affirmation amounts to a federal

23   constitutional violation. "Qualified immunity shields federal and state officials from money

24   damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or

1    constitutional right, and (2) that the right was 'clearly established' at the time of the challenged

2    conduct." <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2080 (2011) (quoting <u>Harlow v. Fitzgerald</u>, 457

3    U.S. 800, 818 (1982)). The Supreme Court has held that the "judges of the district courts and the

4    courts of appeals should be permitted to exercise their sound discretion in deciding which of the

5    two prongs of the qualified immunity analysis should be addressed first in light of the

6    circumstances in the particular case at hand." <u>Pearson v. Callahan</u>, 55 U.S. 223, 236 (2009).

7    Because this matter comes before the Court on a motion for summary judgment, the evidence of

8    the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.

9    <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). Plaintiff has pled facts that, taken in

10   the light most favorable to him, show that Detective Ungvarsky violated a constitutional right by

11   failing to support his warrant application by oath or affirmation. Therefore, the Court must turn

12   to whether the right was clearly established.

13           Because the "oath or affirmation" requirement appears in the text of the constitution, it is

14   clearly established law. U.S. Const. amend. IV. Various courts of appeals have also held it is

15   clearly established that a reasonable officer should know that a search warrant is invalid if it is

16   not supported by oath or affirmation. <u>See, e.g.</u>, <u>Bueno-Vargas</u>, 383 F.3d at 1111; <u>Brooks</u>, 285 F.

17   3d at 1105-06. The correct inquiry here is whether the officer had reason to know that the

18   specific conduct was prohibited. In <u>Anderson v. Creighton</u>, the Supreme Court held that a "law

19   enforcement officer who participates in a search that violates the Fourth Amendment may not be

20   held personally liable for money damages if a reasonable officer could have believed that the

21   search comported with the Fourth Amendment." 483 U.S. 635 (1987).

22           Detective Ungvarsky does not have qualified immunity because no reasonable officer

23   could have believed that the search comported with the Fourth Amendment. The Ninth Circuit

24

ORDER ON CITY'S MOTION FOR SUMMARY
JUDGMENT- 14

1   gives broad leeway to officers accused of violating the Fourth Amendment, but not broad enough

2   to cover the situation here. In Mills v. Graves, the Ninth Circuit held that an officer did not

3   violate a clearly established right when he obtained a telephonic search warrant from a judge

4   who failed to place him under oath prior to receiving his statement of probable cause. 930 F.2d

5   729, 734 (9th Cir. 1991). The Ninth Circuit gave three reasons why the officer's conduct did not

6   violate a clearly established right: (1) the officer signed a sworn statement five days after his

7   telephone conference with the judge, (2) the officer was operating under time pressure, entitling

8   him to additional leeway, and (3) the officer could be liable for perjury based on his statements

9   to the judge. Id. None of these factors are present here. (Dkt. No. 24 at 21-22.) Defendants do not

10  assert that Detective Ungvarsky made a sworn statement at a later date, that he was under time

11  pressure when he wrote the affidavit, or that he could be prosecuted for perjury had the

12  statements in his affidavit proven to be false. (Id.) Defendants have offered no facts in their

13  opposition to the present motion supporting the conclusion that a reasonable officer would have

14  had reason to believe the search warrant was valid. (Dkt. No. 31.)

15          Malice is not required to recover under § 1983. See Harlow v. Fitzgerald, 457 U.S. 800

16  (1982). The Harlow Court articulated the test that still controls: government officials "are

17  shielded from liability for civil damages insofar as their conduct does not violate clearly

18  established statutory or constitutional rights of which a reasonable person would have known."

19  Id. at 818. While the Supreme Court has "recognized the need to allow some latitude for honest

20  mistakes that are made by officers in the dangerous and difficult process of making arrests and

21  executing search warrants," it has never held that negligent mistakes in a warrant application do

22  not support a Fourth Amendment claim. See Maryland v. Garrison, 480 U.S. 79, 87 (1987).

23  Specific intent is not required in order to establish a violation of the Fourth Amendment.

24

1  Caballero v. Concord, 956 F.2d 204, 206 (9th Cir. 1992). "Rather, the question is whether the

2  officer's actions are objectively reasonable in light of the facts and circumstances confronting

3  [him], without regard to [his] underlying intent or motivation." Id., citing Graham v. Connor, 490

4  U.S. 386, 397. Here, Plaintiff's allegations, taken in the light most favorable to him, describe the

5  officer's complete failure to support his warrant application by any kind of oath or affirmation.

6  (Dkt. No. 1 at 4.) Because no exigent circumstances are shown and because Detective Ungvarsky

7  did not make other efforts short of swearing or affirming that his statements were true, his

8  conduct is not objectively reasonable in the circumstances.

9       Detective Ungvarsky is also not relieved of liability merely because his alleged failure

10  was technical in nature. The Supreme Court has held that an officer's failure to strictly follow the

11  requirements of the Fourth Amendment is not merely a technical error, but a serious

12  constitutional violation. "It is incumbent on the officer executing a search warrant to ensure the

13  search is lawfully authorized and lawfully conducted." Groh v. Ramirez, 540 U.S. 551, 563

14  (2004). "That is not a duty to proofread; it is, rather, a duty to ensure that the warrant conforms

15  to constitutional requirements." Id. A "reasonably competent public official should know the law

16  governing his conduct." Harlow, 457 U.S. at 818-19.

17       Detective Ungvarsky also cannot claim that he relied in good faith on the decisions of

18  others, because he authored the search warrant application and he personally executed the search.

19  In Groh, the Supreme Court held that when an officer "himself prepared the invalid warrant, he

20  may not argue that he reasonably relied on the Magistrate's assurance" that the warrant was

21  valid. 540 U.S. at 564. In contrast, an officer is not "required to disbelieve a judge who has

22  advised him, by word and by action, that the warrant he possesses authorizes him to conduct the

23  search he has requested." Mass. v. Sheppard, 468 U.S. 981, 989-90 (1984). This is because "in

24

1   most jurisdictions, the determinations of a judge acting within his jurisdiction, even if erroneous,

2   are valid and binding until they are set aside under some recognized procedure." Id. at 990. In the

3   present case, Commissioner Moon signed the warrant, but he never made any specific assurance

4   to Detective Ungvarsky that he should go ahead with the search. (Dkt. No. 26 at 2.) In fact,

5   Commissioner Moon's act of striking the language "subscribed before me" from the affidavit

6   that he returned to Detective Ungvarsky should have served as a red flag that a more careful

7   officer might have noticed in time to prevent a constitutional violation. (Id.)

8        Neither does the fact that that the warrant application and affidavit were reviewed and

9   approved by a deputy prosecuting attorney relieve the officer from liability. In his declaration,

10  Detective Ungvarsky explains that he gave the materials to the prosecutor for approval, they

11  were approved, and then he began to contact judges to see if one was available. (Dkt. No. 25 at

12  4.) Based on this explanation, it appears the act of swearing or affirming would have happened

13  after the prosecutor had reviewed the documents, when the officer was in communication with

14  the judge. (Id.) As the Supreme Court explained in Groh, police officers are presumed to know

15  the guidelines of their own departments, including the process for obtaining and executing

16  warrants. 540 U.S. at 564. Even if the deputy prosecutor erred, a reasonably competent detective

17  should know that a search warrant must be supported by oath or affirmation.

18       Detective Ungvarsky also cannot claim that he relied in good faith on others because he

19  personally executed the search warrant. The Supreme Court has explained that "executing

20  officers cannot reasonably presume [the search warrant] to be valid." Groh, 540 U.S. at 565,

21  citing United States v. Leon, 468 U.S. 897, 923 (1984). This is particularly true when, "even a

22  cursory reading of the warrant in this case—perhaps just a simple glance—would have revealed

23  a glaring deficiency that any reasonable police officer would have known was constitutionally

24

1   fatal." <u>Groh</u>, 540 U.S. at 564. According to Detective Ungvarsky's declaration, he executed the

2   search along with other Bothell police officers and members of the Snohomish County Narcotics

3   Task Force. (Dkt. No. 25 at 5.) Detective Ungvarsky states that he "initially maintained a

4   perimeter position" outside the house, but later says that he saw the safe inside Plaintiff's house,

5   and personally identified numerous firearms inside the safe. (<u>Id.</u> at 5-6.) As an executing officer,

6   Detective Ungvarsky had yet another reason to check the warrant. <u>Groh</u>, 540 U.S. at 564.

7         These allegations against Detective Ungvarsky constitute a constitutional violation. No

8   reasonable officer could claim to be unaware of the basic rule that, absent consent or exigency, a

9   warrantless search of the home is presumptively unconstitutional. Therefore, Detective

10  Ungvarsky is not entitled to qualified immunity.

11                                    **Conclusion**

12        Because Plaintiff fails to allege his constitutional injuries resulted from municipal policy,

13  practice, or custom, the Court GRANTS summary judgment in favor of Defendant City of

14  Bothell on Plaintiff's § 1983 claims. The Court also GRANTS summary judgment in favor of

15  Defendants on Plaintiff's malicious prosecution claim. However, because Detective Ungvarsky

16  is not entitled to qualified immunity and because genuine issues of material fact exist regarding

17  all other claims, the Court DENIES Plaintiff's motion for summary judgment on these claims.

18        The clerk is ordered to provide copies of this order to all counsel.

19        Dated this 24th day of October, 2012.

20

21

                                         Marsha J. Pechman
22                                       United States District Judge

23

24